IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

**LAVEL HICKS,**

    **Plaintiff,**

v.                   Civil Action No. 5:13cv140
                        (Judge Stamp)

**CECELIA JANISZEWSKI, Medical
Administrator, Northern Regional Jail,
and JOHN DOE, Doctor, Northern
Regional Jail,**

    **Defendants.**

## REPORT AND RECOMMENDATION

### I. Procedural History

The *pro se* plaintiff, a former inmate at the Northern Regional Jail ("NRJ") in Moundsville, West Virginia,[1] initiated this civil rights action pursuant to 42 U.S.C. §1983 on October 9, 2013. By Order entered October 10, 2013, the plaintiff was granted leave to proceed *in forma pauperis*. On November 4, 2013, the plaintiff paid his required initial partial filing fee. That same day, the undersigned conducted a preliminary review of the complaint and determined that summary dismissal was not appropriate. Accordingly, an Order to Answer was entered, and summonses were issued for each of the defendants. On November 12, 2013, the summons for Dr. John Doe was returned unexecuted.

On November 27, 2013, the defendants filed a Motion to Dismiss with an attached Memorandum in support. Because the plaintiff was proceeding without counsel, the Court issued Roseboro Notice on December 17, 2013. On December 19, 2013, the plaintiff filed a *Pro*

---

[1] The plaintiff is now incarcerated at St. Mary's Correctional Center in St. Mary's, West Virginia.

1

*Se* Response to State's Motion to Dismiss Complaint and Motion for Summary Judgment, and on December 30, 2013, the defendants filed a reply.

This case is before the undersigned for a Report and Recommendation on the parties' dispositive motions.

## II. Contentions of the Parties

### A. The Complaint

In his complaint, the plaintiff asserts an Eighth Amendment claim of deliberate indifference to serious medical needs, averring that "on or about" July 16, 2012,[2] while incarcerated at the Northern Regional Jail in Moundsville, West Virginia, he broke his right hand, and that other than a diagnostic x-ray performed, presumably the day after the injury,[3] confirming the fracture, and the occasional provision of ice "after lockdown,"[4] the defendants denied him any treatment, emergency or otherwise, including medication to relieve his "excruciating pain" for at least a month or more.

Plaintiff alleges that he immediately notified "medical" of his injury when it occurred and describes his hand as being swollen "like a balloon" after the injury. He requested something for pain and to be taken to a hospital for treatment.[5] However, he contends that the medical staff advised him that defendant Janiszewski ("Janiszewski") denied his requests for pain medication

---

[2] It is unclear from the pleadings what the exact date of plaintiff's injury was. Unless plaintiff was misadvised as to the dates when he created them, the copies of his contemporaneously-created administrative remedies, attached to his complaint, indicate that the more likely date of the injury was August 24, 25, or 26, 2012. Dkt.# 1-2 at 2; Dkt.# 1-3 at 2; see also Dkt.# 9 at 1.

[3] See Dkt.# 1-2 at 2 and Dkt.# 1-3 at 2.

[4] Dkt.# 1-4 at 2.

[5] Dkt.# 9, ¶2 at 2.

and emergency medical services.[6] Despite the defendants' awareness of the obvious fracture on x-ray, and despite plaintiff's multiple pleas for treatment and the numerous grievances he filed over the next month, the defendants did not provide him with any medical treatment at all, until at some point after an unknown date in late September, 2012,[7] a period of likely more than one month. Even then, the plaintiff alleges, it was only after he contacted his family to ask them to call the prison regarding his need for medical treatment, and his family intervened on his behalf, that the plaintiff was finally sent to an outside physician.[8] The plaintiff contends that by the time he was finally seen by a physician, the fracture had already healed in "an awkward position," and had to be surgically re-broken and repaired with pins."[9]

Post-operatively, plaintiff contends that the defendants were again deliberately indifferent to his serious medical needs, when they refused to timely return him to the doctor for cast removal within four weeks,[10] and then pin removal, two-to-three weeks after that,[11] in accordance with his physician's "strict instructions."[12] Instead, he contends, the defendants did

---

[6] Dkt.# 9, ¶2 at 2.

[7] Dkt.# 23 at 4.

[8] Dkt.# 9, ¶13 at 4.

[9] Dkt.# 9, ¶14 at 4 - 5.

[10] Dkt.# 9, ¶14 at 4 - 5.

[11] Dkt.# 1-7 at 2.

[12] Dkt.# 9, ¶15 at 5.

not return him to the doctor for the pin removal for six weeks or longer past the time specified,[13] and the delay in pin removal caused a "deformed hand for the rest of [plaintiff's] . . . life."[14]

Plaintiff asserts that he has exhausted his administrative remedies.

As relief, he seeks unspecified money damages.

**B. Defendants' Motion to Dismiss**

In their motion, the defendants argue that plaintiff's complaint should be dismissed because

1) plaintiff has failed to state a claim upon which relief can be granted;

2) plaintiff's allegations regarding his medical treatment do not state a viable 8th or 14th Amendment civil rights claim;

3) the plaintiff has failed to comply with the West Virginia Medical Professional Liability Act ("MPLA"); and

4) the defendants are entitled to good faith qualified immunity.

**D. Plaintiff's *Pro Se* Response to State's Motion to Dismiss Complaint and Motion for Summary Judgment**

Plaintiff reiterates his arguments and attempts to refute the defendants' on the same. He specifically denies that he is stating a claim for medical negligence; rather, he avers that he is only making an Eighth Amendment claim for deliberate indifference to serious medical needs. He asserts that he is entitled to summary judgment in his favor, because there is no genuine issue of material fact, and he is entitled to judgment as a matter of law.

**E. Defendants' Reply to Plaintiff's *Pro Se* Response to State's Motion to Dismiss Complaint and Motion for Summary Judgment**

---

[13] Dkt.# 1-8 at 2. It is unclear from the record when, exactly, the defendants did finally bring the plaintiff back to the doctor for pin removal. Plaintiff did not attach copies of any of his medical records to his complaint, and failed to provide specific dates as to when he was first seen by the physician; when the surgery was performed; when the cast was removed; or when the pins were finally removed.

[14] Dkt.# 9, ¶19 at 5.

The defendants reiterate their arguments and attempt to refute the plaintiff's responses to the same, asserting that plaintiff's contention that the MPLA is inapplicable to him is incorrect.

### III.  Standard of Review

**A. Motion to Dismiss**

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding facts, the merits of a claim, or the applicability of defenses." Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir. 1992) (citing 5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1356 (1990)). In considering a motion to dismiss for failure to state a claim, a plaintiff's well-pleaded allegations are taken as true and the complaint is viewed in the light most favorable to the plaintiff. Mylan Labs, Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir. 1993); see also Martin, 980 F.2d at 952.

The Federal Rules of Civil Procedure "require only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). Courts long have cited the "rule that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of [a] claim which would entitle him to relief." Conley, 355 U.S. at 45-46. In Twombly, the United States Supreme Court noted that a complaint need not assert "detailed factual allegations," but must contain more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action." Conley, 550 U.S. at 555 (citations omitted). Thus, the "[f]actual allegations must be enough to raise a right to relief above the speculative level," (Id). (citations omitted), to one that is "plausible on

its face," (Id). at 570, rather than merely "conceivable." (Id). Therefore, in order for a complaint to survive dismissal for failure to state a claim, the plaintiff must "allege facts sufficient to state all the elements of [his or] her claim." Bass v. E.I.DuPont de Nemours & Co., 324 F.3d 761, 765 (4th Cir. 2003) (citing Dickson v. Microsoft Corp., 309 F.3d 193, 213 (4th Cir. 2002); Iodice v. United States, 289 F.3d 279, 281 (4th Cir. 2002)). In so doing, the complaint must meet a "plausibility" standard, instituted by the Supreme Court in Ashcroft v. Iqbal, where it held that a "claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009). Thus, a well-pleaded complaint must offer more than "a sheer possibility that a defendant has acted unlawfully" in order to meet the plausibility standard and survive dismissal for failure to state a claim. (Id).

**B. Summary Judgment**

Pursuant to Rule 56c of the Federal Rules of Civil Procedure, summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." In applying the standard for summary judgment, the Court must review all the evidence "in the light most favorable to the nonmoving party." Celotex Corp. V. Catrett, 477 U.S. 317, 322-23 (1986). The court must avoid weighing the evidence or determining the truth and limit its inquiry solely to a determination of whether genuine issues of triable fact exist. Anderson v. liberty lobby, Inc., 477 U.S. 242, 248 *1986).

In Celotex, the Supreme Court held that the moving party bears the initial burden of informing the Court of the basis for the motion and of establishing the nonexistence of genuine

issues of fact. Celotex at 323. Once "the moving party has carried its burden under Rule 56, the opponent must do more than simply show that there is some metaphysical doubt as to material facts." Matsushita Electric Industrial Co. V. Zenith Radio Corp., 475 U.S. 574, 586 (1986). The nonmoving party must present specific facts showing the existence of a genuine issue for trial. Id. This means that the "party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials of [the] pleading, but...must set forth specific facts showing that there is a genuine issue for trial." Anderson at 256. The "mere existence of a scintilla of evidence" favoring the nonmoving party will not prevent the entry of summary judgment. Id. at 248. To withstand such a motion, the nonmoving party must offer evidence from which a "fair-minded jury could return a verdict for the [party]." Id. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Felty v. Graves-Humphreys Co., 818 F.2d 1126, 1128 (4th Cir. 1987). Such evidence must consist of facts which are material, meaning that they create fair doubt rather than encourage mere speculation. Anderson at 248. Summary judgment is proper only "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party." Matsushita at 587 (citation omitted).

## IV. Analysis

**Deliberate Indifference to Serious Medical Needs**

To state a claim under the Eighth Amendment for ineffective medical assistance, the plaintiff must show that the defendant acted with deliberate indifference to his serious medical needs. Estelle v. Gamble, 429 U.S. 97, 104 (1976). To succeed on an Eighth Amendment cruel and unusual punishment claim, a prisoner must prove: (1) that objectively the deprivation of a

basic human need was "sufficiently serious," and (2) that subjectively the prison official acted with a "sufficiently culpable state of mind." Wilson v. Seiter, 501 U.S. 294, 298 (1991).

A serious medical condition is one that has been diagnosed by a physician as mandating treatment or that is so obvious that even a lay person would recognize the need for a doctor's attention. Gaudreault v. Municipality of Salem, Mass., 923 F.2d 203, 208 (1st Cir. 1990), cert. denied, 500 U.S. 956 (1991). A medical condition is also serious if a delay in treatment causes a life-long handicap or permanent loss. Monmouth County Corr. Inst. Inmates v. Lanzaro, 834 F.2d 326, 347 (3rd Cir. 1987), cert. denied, 486 U.S. 1006 (1988).[1]

---

[1] The following are examples of what does or does not constitute a serious injury. A rotator cuff injury is not a serious medical condition. Webb v. Prison Health Services, 1997 WL 298403 (D. Kansas 1997). A foot condition involving a fracture fragment, bone cyst and degenerative arthritis is not sufficiently serious. Veloz v. New York, 35 F.Supp.2d 305, 312 (S.D.N.Y. 1999). Conversely, a broken jaw is a serious medical condition. Brice v. Virginia Beach Correctional Center, 58 F. 3d 101 (4th Cir. 1995); a detached retina is a serious medical condition. Browning v. Snead, 886 F. Supp. 547 (S.D. W. Va. 1995). And, arthritis is a serious medical condition because the condition causes chronic pain and affects the prisoner's daily activities. Finley v. Trent, 955 F. Supp. 642 (N.D. W.Va. 1997). A pituitary tumor is a serious medical condition. Johnson v. Quinones, 145 F.3d 164 (4th Cir. 1998). A plate attached to the ankle, causing excruciating pain and difficulty walking and requiring surgery to correct it is a serious medical condition. Clinkscales v. Pamlico Correctional Facility Med. Dep't., 2000 U.S. App. LEXIS 29565 (4th Cir. 2000). A tooth cavity can be a serious medical condition, not because cavities are always painful or otherwise dangerous, but because a cavity that is not treated will probably become so. Harrison v. Barkley, 219 F.3d 132, 137 (2nd Cir. 2000). A prisoner's unresolved dental condition, which caused him great pain, difficulty in eating, and deterioration of the health of his other teeth, was held to be sufficiently serious to meet the Estelle standard. Chance v. Armstrong, 143 F.3d 698, 702 - 703 (2nd Cir. 1998). A degenerative hip condition that caused a prisoner "great pain over an extended period of time and . . . difficulty walking" is a serious condition. Hathaway v. Coughlin, 37 F.3d 63, 67 (2nd Cir. 1994). Under the proper circumstances, a ventral hernia might be recognized as serious. Webb v. Hamidullah, 281 Fed. Appx. 159 (4th Cir. 2008). A twenty-two hour delay in providing treatment for inmate's broken arm was a serious medical need. Loe v. Armistead, 582 F.2d 1291, 1296 (4th Cir. 1978). A ten-month delay in providing prescribed medical shoes to treat severe and degenerative foot pain causing difficulty walking is a serious medical need. Giambalvo v. Sommer, 2012 WL 4471532 at *5 (S.D.N.Y. Sep. 19, 2012). Numerous courts have found objectively serious injury in cases involving injury to the hand, including broken bones. See, e.g., Lepper v. Nguyen, 368 F. App'x. 35, 39 (11th Cir. 2010); Andrews v. Hanks, 50 Fed. Appx. 766, 769 (7th Cir. 2002); Bryan v. Endell, 141 F.3d 1290, 1291 (8th Cir. 1998) Beaman v. Unger, 838 F.Supp. 2d 108, 110 (W.D. N.Y. 2011); Thompson v. Shutt, 2010 WL 4366107 at *4 (E.D. Cal. Oct. 27, 2010); Mantigal v. Cate, 2010 WL 3365735 at *6 (C.D. Cal. May 24, 2010) *report and recommendation adopted,* 2010 WL 3365383 (C.D. Cal. Aug. 24, 2010); Johnson v. Adams, 2010 WL 1407787 at *4 (E.D. Ark. Mar. 8, 2010) report and recommendation adopted, 2010 WL 1407790 (E.D. Ark. Mar. 31, 2010); Bragg v. Tyler, 2007 WL 2915098 at *5 (D.N.J. Oct. 4, 2007); Vining v. Department of Correction, 2013 U.S. Dist. LEXIS 136195 at *13 (S.D.N.Y. 2013)(chronic pain arising from serious hand injuries satisfies the objective prong of Eighth Amendment deliberate indifference analysis). A three-day delay in providing medical treatment for an inmate's broken hand was a serious medical need. Cokely v. Townley, 1991 U.S. App. LEXIS 1931 (4th Cir. 1991).

The subjective component of a cruel and unusual punishment claim is satisfied by showing that the prison official acted with deliberate indifference. Wilson, 501 U.S. at 303. A finding of deliberate indifference requires more than a showing of negligence. Farmer v. Brennan, 511 U.S. 825, 835 (1994). A prison official "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Id. at 837. A prison official is not liable if he "knew the underlying facts but believed (albeit unsoundly) that the risk to which the fact gave rise was insubstantial of nonexistent." Id. at 844.

"To establish that a health care provider's actions constitute deliberate indifference to a serious medical need, the treatment, [or lack thereof], must be so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." Miltier v. Beorn, 896 F.2d 848, 851 (4th Cir. 1990). A mere disagreement between the inmate and the prison's medical staff as to the inmate's diagnosis or course of treatment does not support a claim of cruel and unusual punishment unless exceptional circumstances exist. Wright v. Collins, 766 F.2d 841, 849 (4th Cir. 1985). A constitutional violation is established when "government officials show deliberate indifference to those medical needs which have been diagnosed as mandating treatment, conditions which obviously require medical attention, conditions which significantly affect an individual's daily life activities, or conditions which cause pain, discomfort or a threat to good health." See Morales Feliciano v. Calderon Serra, 300 F.Supp.2d 321, 341 (D.P.R. 2004) (citing Brock v. Wright, 315 F.3d 158, 162 (2nd Cir. 2003)).

**A. James Spencer, Administrator**

Plaintiff's complaint repeatedly refers to "Defendant Spencer" as having been deliberately indifferent to his serious medical needs. However, the plaintiff has not named Spencer as a defendant in this action, thus, no claims against Spencer will be given review.

## B. Cecelia Janiszewski, NRJ Medical Administrator

The plaintiff's claim that defendant Janiszewski deprived him of his Eighth Amendment right to be free from cruel and unusual punishment raises a claim under 42 U.S.C. § 1983, which provides as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia.

Therefore, in order to state a claim under 42 U.S.C. § 1983, the plaintiff must demonstrate that a person acting under color of state law deprived him of the rights guaranteed by the Constitution or federal laws. Rendall-Baker v. Kohn, 547 U.S. 830, 838 (1982). Here, the defendants admit that both Janiszewski and Dr. John Doe are Prime Care Medical, Inc. employees, contracted with the West Virginia State Regional Jail Authority to staff the NRJ medical department and to provide medical services to inmates.[15] They aver that as health care providers working for PrimeCare Medical, Inc. at the NRJ, the defendants were acting under color of state law, and thus, they "stand in the shoes of a state actor."[16]

---

[15] Dkt.# 19-1 at 2.

[16] Dkt.# 19-1 at 9 – 10.

While plaintiff contends that defendant Janiszewski was "hired by the State to administer timey [sic] and effective medical services to inmates at the named jail,"[17] he also specifically alleges that despite his repeated pleas for pain relief and/or treatment, the only thing Janiszewski did for him during the first month after his injury was to order "an ex-ray [sic] to be taken for the doctor's review"[18] and occasionally permit him some ice to put on his hand "after lockdown." He asserts that no one told him the results of the x-ray until August 30, 2012, and then, only after he asked for the results.[19] He further alleges that Janiszewski was personally involved with denying him pain medication, denying him emergency treatment for his fracture, and denying him timely post-operative care. He alleges that after he repeatedly requested pain medication, emergency treatment, or any treatment at all, when he was advised by medical staff that Janiszewski would not permit it, he filed at least five grievances[20] with her, seeking treatment for his broken hand before his surgery, and at least two grievances after,[21] begging to be taken back to the doctor for cast and then pin removal.

The defendants contend that the plaintiff's claims do not rise to the level of an Eighth Amendment violation, because "at best," plaintiff's claim amounts to a dispute over the care he received because he was not seen by a physician or given pain medication as soon as he reported the injury. They argue that the plaintiff "admits that his hand was x-rayed and that when the x-

---

[17] Dkt.# 1 at 2.

[18] Dkt.# 9, ¶2 at 2.

[19] Dkt.# 1-4 at 2.

[20] Dkt.# 1-1 at 2; Dkt.# 1-2 at 2; Dkt.# 1-3 at 2; Dkt.# 1-4 at 2; and Dkt.# 1-5 at 2.

[21] Dkt.# 1-7 at 2 and Dkt.# 1-8 at 2.

ray revealed a fracture of his hand, he was sent to an outside physician for treatment," and assert that the plaintiff "alleges a delay in treatment of only a few days."[22]

Here, viewing the allegations in the complaint in the light most favorable to the plaintiff, as required, it appears clear from the record that the plaintiff has sufficiently proven the objective prong necessary to prove an Eighth Amendment claim of deliberate indifference, in that his fractured hand is a "sufficiently serious" medical need. Wilson, *supra* at 298; see also Cokely v. Townley, 1991 U.S. App. LEXIS 1931 (4th Cir. 1991)(unpublished) *per curiam* (an inmate's broken hand was a serious medical need). Moreover, because a serious medical condition is one that has been diagnosed by a physician as mandating treatment, or one that is so obvious that even a lay person would recognize the need for a doctor's attention,[23] plaintiff's broken hand again qualifies; plaintiff alleges that his operating physician, an outside physician by the name of Dr. Haus, immediately ordered surgery as soon as he saw plaintiff's hand.

The undersigned finds that the defendants' claim that there was only a "few days" delay in treatment is not supported by the record provided. The record before the undersigned indicates that Janiszewski ordered or obtained the August 24 or 25, 2012 x-ray; as the NRJ Medical Administrator, she was privy to the results of that x-ray, and was thus aware that the hand was fractured for over a month, but failed to provide treatment or arrange for the plaintiff to obtain it elsewhere. In Cokely, the Fourth Circuit found that a three-day delay in treating that plaintiff's fractured hand was sufficient to create a genuine issue concerning whether the defendant was deliberately indifferent to his serious medical needs. Here, Hicks alleges he did not receive treatment for his fractured hand until well over a month after it occurred. The record before the undersigned does not even attempt to explain why Janiszewski did not provide him treatment.

---

[22] Dkt.# 19-1 at 7.

[23] Gaudreault, *supra* at 208.

Accordingly, the undersigned finds that the plaintiff has met his burden of proving the subjective component of his Eighth Amendment claim. Wilson, *supra* at 303. Janiszewski, as the Medical Administrator, was both aware of facts from which the inference could be drawn that a substantial risk of serious harm existed; she could not have helped to also draw the inference. Farmer, *supra* at 837. This is not a case involving a mere disagreement as to what medical care is appropriate, as the defendants contend. The defendants cannot seriously argue that the plaintiff's complaint over one-month-plus delay in treating a fracture is a "mere disagreement" over appropriate medical care. Here, there appears to have been no care provided at all, for over a month. As a health care professional privy to the underlying facts regarding plaintiff's injury, symptoms, and x-ray report findings, Janiszewski cannot escape liability for ignoring the substantial risk to the plaintiff in delaying treatment for such an injury. Id. at 844.

Accordingly, the undersigned finds that "[d]elay in providing treatment does not violate the Eighth Amendment . . . unless the gravity of the injury is apparent. Cooper v. Dyke, 814 F.2d 941 (4th Cir. 1987). A constitutional violation is established when "government officials show deliberate indifference to those medical needs which have been diagnosed as mandating treatment, conditions which obviously require medical attention, conditions which significantly affect an individual's daily life activities, or conditions which cause pain, discomfort or a threat to good health." Morales, *supra* at 341. The only conclusion the undersigned can reach, on the meager record presently before me, is that the care Janiszewski provided constituted deliberate indifference to a serious medical need. The treatment, or, in the instant case, the lack thereof, was so "grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." Miltier v. Beorn, *supra* at 851. While it is true that qualified immunity protects government officials from suits for civil damages arising out of the

exercise of their discretionary functions, here, Janiszewski's actions appear to have violated "a clearly established statutory or constitutional right of which a reasonable person would have known,"[24] rendering that qualified immunity unavailable.

### C) John Doe, Doctor at NRJ

Plaintiff alleges that Dr. John Doe, the physician at the Northern Regional Jail, reviewed his August, 2012 x-ray; did nothing to provide him with pain relief; and failed to inform or direct prison officials to take him to receive needed outside emergency care. Thus, plaintiff concludes that Dr. John Doe, likewise with Janiszewski, is liable to him for an Eighth Amendment violation.[25]

Based on the sparse record presently before me, the undersigned agrees. A physician is uniquely qualified to appreciate the substantial risk in ignoring such a serious injury, one which mandates treatment, obviously require medical attention, and which significantly affect an individual's daily life activities, or conditions which cause pain, discomfort or a threat to good health.

However, the undersigned notes that while the defendants included a defense of Dr. John Doe in their dispositive motion, they have not specifically stated that they are waiving the affirmative defense of plaintiff's failure to effectuate service of process upon him. As required by Rule 4(c)(2), Fed.R.Civ.P. and 28 U.S.C. §1915(d), the U.S. Marshals Service attempted to serve the summons and complaint on Dr. John Doe. However, because the plaintiff did not identify Dr. John Doe by his true name, the summons for him came back unexecuted.[26] While

---

[24] Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).

[25] Dkt.# 23 at 7-8; Dkt.# 23 at 13 – 14.

[26] The summons stated "unable to serve summons because of the lack of a name for Dr. No one at the NRJ would accept summons." Dkt.# 18.

14

Rule 4(m), in addition to specifying the 120-day time period for service of process, states that "if the plaintiff shows good cause for the failure [to serve in a timely way], the court shall extend the time for service for an appropriate period." While this language appears to require the court to grant requested extensions of time, the requirement applies only if the plaintiff can establish good cause; the determination as to whether good cause exists is one left to the court's discretion. San Giacomo-Tano v. Levine, 1999 U.S. App. LEXIS 26997 at * 3-4 (4th Cir. 1999)(unpublished) *per curiam*.

Here, upon the facts alleged in this case, and the defendants' failure to provide an adequate record upon which these proceedings could be expeditiously resolved, the undersigned recommends that if the defendants do not waive the affirmative defense of failure to effectuate service on the John Doe defendant, and consider accepting service of process on his behalf, that the plaintiff be given an additional thirty days in which to identify the true name of "Dr. John Doe," so that process can be re-issued and properly served upon him.

In the instant case, the plaintiff has alleged injuries that are more than *de minimis*. Moreover, the kind of behavior alleged in the complaint, if true, could establish a violation of the Eighth Amendment. Accordingly, based on the facts now before the Court, the undersigned is of the opinion that defendants should be made to answer the complaint as to the plaintiff's Eighth Amendment claims.

## V. Recommendation

For the reasons stated, the undersigned recommends that the defendant's Motion to Dismiss (Dkt.# 19) be **DENIED** and that the defendants respond to the claims made against them. Further, the undersigned recommends that the plaintiff's Motion for Summary Judgment,

contained within his *Pro Se* Response to State's Motion to Dismiss Complaint and Motion for Summary Judgment (Dkt.# 22) be **DENIED without prejudice at this time.**

Within **fourteen (14) days** after being served with a copy of this Report and Recommendation, **or by June 10, 2014**, any party may file with the Clerk of Court written objections identifying those portions of the recommendation to which objection is made and the basis for such objections. A copy of any objections shall also be submitted to the United States District Judge. **Failure to timely file objections to this recommendation will result in waiver of the right to appeal from a judgment of this Court based upon such recommendation**. 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984).

The Clerk is directed to send a copy of this Report and Recommendation to the *pro se* plaintiff by certified mail, return receipt requested, to his last known address as shown on the docket, and to counsel of record via electronic means.

DATED: May 27, 2014

/s/ James E. Seibert
JAMES E. SEIBERT
UNITED STATES MAGISTRATE JUDGE